UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL CREATIVE
MANAGEMENT, INC.,

      Plaintiff,

- against -

RICHARD R. ABATE,

      Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/07

**OPINION AND ORDER**
07 Civ. 1979(PKL)

**APPEARANCES**

LITTLER MENDELSON, P.C.
A. Michael Weber, Esq.
885 Third Avenue
New York, New York 10022
Michael Pappas, Esq.

Attorneys for Plaintiff

KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
Brian S. Kaplan, Esq.
1633 Broadway
New York, New York 10019
Mark W. Lerner, Esq.
Daniel Turinsky, Esq.
Leslie Ballantyne, Esq.

Attorneys for Defendant

**LEISURE, District Judge:**

Plaintiff International Creative Management, Inc. ("ICM") applies to this Court, by way of an order to show cause, for an order pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining defendant Richard R. Abate, during the pendency of related arbitration proceedings,[1] from competing with ICM and from disclosing ICM's confidential information. Based on the findings of fact and conclusions of law set forth below, the application is denied.

## BACKGROUND

ICM filed its complaint with this Court on March 7, 2007. On March 8, 2007, this Court signed an order to show cause why a preliminary injunction and temporary restraining order should not issue. ICM had also sought, ex parte, a temporary restraining order. Such an order was not issued ex parte because the plaintiff had not met the requirements of Rule 65(b). Namely, it did not "clearly appear from the specific facts shown" by plaintiff's attorney's affidavit "that immediate and

---

[1] The agreement that is the subject of this action contains a broad arbitration provision. (See Hr'g. Ex. 2 at Ex. A ¶ 20). ICM has initiated arbitration proceedings (see Hr'g Tr. 13:8-9, Mar. 22, 26, 2007; Hr'g Ex. I), and Mr. Abate agrees that the underlying dispute is to be arbitrated, not litigated before this Court. (See Hr'g Tr. at 15:16-22.) Nevertheless, it is well settled that "the fact that a dispute is to be arbitrated . . . does not absolve the court of its obligation to consider the merits of a requested preliminary injunction." Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co., 749 F.2d 124, 125 (2d Cir. 1984) (per curiam) (citing Erving v. Virginia Squires Basketball Club, 468 F.2d 1064, 1067 (2d Cir. 1972)); accord Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1052 (2d Cir. 1990).

2

irreparable injury, loss or damage [would] result to the applicant before the adverse party or that party's attorney [could] be heard in opposition." Fed. R. Civ. P. 65(b). Indeed, the affidavit did not allege any facts at all. Further, the plaintiff's attorney had not certified the efforts made to give notice to defendant. See id. ICM subsequently withdrew its application for a temporary restraining order. (See Hr'g Tr. 14:19-23, Mar. 22, 26, 2007.) An evidentiary hearing was held on March 22 and March 26, 2007.

## DISCUSSION

This Court has subject-matter jurisdiction over this action because the parties are completely diverse and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332 (2000). The parties agree that New York law applies. (See Hr'g Ex. 2 at Ex. A ¶ 21; Hr'g Tr. 21:15-17).

I.   Factual Background

ICM is a talent and literary agency employing approximately 14 literary agents. (See Hr'g Tr. 24:23, 26:21-22). ICM's business is to procure employment opportunities for its clients (Hr'g Tr. 25:2-6), and its literary agents sell books and manuscripts to publishers on behalf of its clients (see Hr'g Tr. 26:23-27:3). Richard Abate was until recently a literary agent employed by ICM, where he had been employed since 1996. (Hr'g Tr. 27:8-9.) Mr. Abate and ICM had entered into a series of

employment agreements, the most recent of which they entered into on December 4, 2004 for the term of January 1, 2005 through December 31, 2007. (See Hr'g Exs. 2 ¶ 2, 12-14.)

Mr. Abate's most recent employment agreement contains two restrictive covenants. Paragraph 6(a) provides that "Employee shall not . . . engage in any activities competitive with, or antithetical to, those of the Company." (Hr'g Ex. 2 at Ex. A ¶ 6(a).) This provision purports to remain in effect through December 31, 2007, regardless of whether the agreement is otherwise terminated. Paragraph 7 contains another, narrower, covenant not to compete. (See Hr'g Ex. 2 at Ex. A ¶ 7). However, for the instant analysis, a description of the broader covenant suffices.

The agreement also contains a confidentiality provision. Specifically, the agreement provides that

> all memoranda, notes, records, data, computer files, and other documents made or compiled by Employee, or received by or made available to Employee during or prior to the Term hereof, concerning the business of Company or of any clients of Company . . . shall be Company's property and shall be delivered to Company, along with all copies thereof, upon the termination of this Agreement or at any other time on request of the Company. Employee shall, during and after the Term hereof, keep in confidence and shall not use for Employee or others, other than in connection with the business or affairs of Company, or divulge to others, any secret or confidential information, knowledge or data of Company or of any clients of Company obtained by Employee as a result of Employee's employment . . .

(Hr'g Ex. 2 at Ex. A ¶ 7(b).)

4

Mr. Abate acknowledged in the employment agreement that it is ICM's policy "not to permit 'key person' or similar clauses" in representation agreements between ICM and ICM's clients. (Hr'g Ex. 2 at Ex. A ¶ 6(d).) This provision reflects ICM's policy of representing clients on a project-by-project basis rather than for a fixed term. (Hr'g Tr. 32:16-22).

Mr. Abate also acknowledged in the agreement that his services were "special, unique, extraordinary and intellectual," that any breach of any material provision of the agreement will cause ICM "great and irreparable injury and damage," and that ICM is entitled to seek equitable relief for any breach of the agreement. (Hr'g Tr. Ex. 2 at Ex. A ¶ 9.)

On January 24, 2007, ICM offered to renegotiate Mr. Abate's existing contract even thought the contract was not due to expire for almost a full year. (Hr'g Tr. 124:5-126:23, 148:4-8; Hr'g Ex. 2 at Ex. A ¶ 2.) The offer included a larger salary. (Hr'g Tr. 42:7-11). On February 9, 2007, Mr. Abate rejected ICM's offer and informed ICM that he intended to work for Endeavor (Hr'g Tr. 252:24-253:5), a talent agency that competes with ICM in some fields but that did not then have a literary division. (See Hr'g Tr. 34:13-23, 327:24-25.) Shortly after Mr. Abate rejected the offer, ICM began calling clients Mr. Abate had represented to tell them that Mr. Abate had left ICM. (Hr'g Tr. 341:21-23, 253:22-25, 145:18-24.) Mr. Abate's employment

with ICM terminated at some time in February or March of 2007. (See Hr'g Tr. 76:21-25, 180:3, 180:10-12; Hr'g Exs. 6, 7).

II. Analysis

A preliminary injunction is "an extraordinary and drastic remedy," Medical Soc'y of the State of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977), and it is "one of the most drastic tools in the arsenal of judicial remedies." Hanson Trust PLC v. SCM Corp., 774 F.2d 47, 60 (2d Cir. 1985). The standard in the Second Circuit for the issuance of a preliminary injunction clearly calls for a showing of (a) irreparable harm; and (b) either (i) a likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits to be a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Inverness Corp. v. Whitehall Laboratories, 819 F.2d 48, 50 (2d Cir. 1987); see also Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979). Whether injunctive relief should issue "'rests in the sound discretion of the district court which, absent abuse of discretion, will not be disturbed on appeal.'" Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (quoting Thornburgh v. American Coll. of Obstetricians and Gynecologists, 476 U.S. 747, 755 (1986)). In non-compete cases, such as this one, the irreparable harm analysis and the likelihood of success on the merits analysis

6

are closely related and often conflated. See, e.g., North Atl. Instruments, Inc. v. Haber, 188 F.3d 38 (2d Cir. 1999).

Irreparable harm is "'the single most important prerequisite for the issuance of a preliminary injunction.'" Reuters, 903 F.2d at 907 (quoting Bell & Howell: Mamiya Co. v. Masel Co. Corp., 719 F.2d 42, 45 (2d Cir. 1983)). "'[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (quoting Rodriguez by Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998)); Reuters, 903 F.2d at 907. Irreparable harm is an "injury for which a monetary award cannot be adequate compensation." Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). Further, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or speculative." Reuters, 903 F.2d at 907 (citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 972 (2d Cir. 1989)). The movant is required to establish not a mere possibility of irreparable harm, but that it is "likely to suffer irreparable harm if equitable relief is denied." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990). "Likelihood sets, of course, a higher standard than 'possibility.'" Id.

7

ICM puts forth four arguments in support of its contention that, absent a preliminary injunction, it will likely suffer irreparable harm. Namely, ICM argues that (a) it will lose client relationships, (b) confidential customer information and trade secrets will be divulged, (c) ICM will be subject to competition by a unique former employee, and (d) Mr. Abate acknowledged in the employment contract that material breach of the agreement will irreparably harm ICM. These arguments are addressed below in seriatim. On all points, ICM fails to bear its burden.

a. Loss of Clients

An employer may suffer irreparable harm when a former employee violates a non-compete clause and thereby causes the former employer to lose client relationships and customer good will that the employer had built up over years. As the Court of Appeals for the Second Circuit has explained, it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69-70 (2d Cir. 1999); see Velo-Bind, Inc. v. Scheck, 485 F.Supp. 102, 109 (S.D.N.Y. 1979) ("By siphoning off plaintiff's carefully gleaned customers, defendants subject plaintiff to a definite possibility of irreparable harm . . . What is at stake here is

8

plaintiff's good will built up over the years, which is not . . . monetarily ascertainable.").

However, ICM has not demonstrated that it has significant long-term client relationships and associated goodwill that merit protection. To the contrary, as expressed in Mr. Abate's employment agreement, ICM's relationships with its literary clients do not take the form of contracts for a fixed term. (Hr'g Ex. 2 at Ex. A ¶ 6(d).) Rather, these relationships are specific to a particular product. (Hr'g Tr. 32:16-22). That is, ICM represents a client for a particular book or article only. (Id.) Unlike ICM's representations of actors, its representation of authors does not extend to future projects that client may undertake. (Id.) Instead, this record suggests that authors decide anew with each project whether to engage ICM or another agency for that project. (See Hr'g Tr. 236:19-22). Further, the record does not indicate that ICM relies on goodwill it has built up with individual clients over the course of several representations. (See Hr'g Tr. 238:10-14.) Cf. Elpac, Ltd. v. Keenpac North America, Ltd., 186 A.D.2d 893, 895 (N.Y. App. Div. 1992) ("[W]e are not persuaded on this record that the European-style shopping bag market is such that the individual defendants' wrongful diversion of one order would give defendants an unfair competitive edge in connection with subsequent orders from the same customer.").

9

Furthermore, ICM does not contend that Mr. Abate has in any way sought to interfere with ICM's existing contractual relationships with its clients. In fact, the current record indicates that Mr. Abate has been scrupulous to avoid interfering with these relationships as well as with nascent relationships not yet formalized by written contract. (See Hr'g Tr. 139:11-20, 143:18-144:9, 241:23-243:4.) Further, ICM maintains that the agreements with authors do not permit authors to terminate the representation of material because an agent leaves ICM. (Hr'g Tr. 32:16-22.) ICM thus has not demonstrated that it likely will suffer imminent, irreparable harm absent an injunction prohibiting Mr. Abate from competing with it for its client base.

b. Trade Secrets and Confidential Customer Information

An employer may be irreparably harmed if an employee misappropriates trade secrets or confidential customer information. See FMC Corp. v. Taiwan Tainan Giant Indus. Co, 730 F.2d 61, 63 (2d Cir. 1984). Customer information is confidential such that New York courts will protect it if it is not known in the trade and is only discoverable through extraordinary efforts. See, e.g., Battenkill Veterinary Equine P.C. v. Cangelosi, 768 N.Y.S.2d 504, 507 (N.Y. App. Div. 2003). Under New York law, a trade secret is "'any formula, pattern, device or compilation of information which is used in one's business,

10

and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.'" North Atlantic Instruments v. Haber, 188 F.3d 38, 44 (2d Cir. 1999) (alteration in original) (quoting Softel, Inc. v. Dragon Med. & Scientific Communications, Inc., 118 F.3d 955, 968 (2d Cir. 1997). In determining whether information constitutes a trade secret, New York courts consider the following factors:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Id. Simply labeling information "confidential" in an agreement does not render that information protectable. See, e.g., AM Medica Comm. Group v. Kilgallen, 261 F.Supp.2d 258, 262 (S.D.N.Y. 2003).

ICM broadly and baldly claims that Mr. Abate has misappropriated many sorts of confidential customer information and trade secrets. For example, ICM claims that Mr. Abate has "confidential knowledge regarding ICM's book publishing strategies, methodologies, and priorities" and that he is using this knowledge for Endeavor's benefit. (Pl.'s Reply Mem. Law at 5-6.) Yet, to the extent there is any evidence in the record

pertaining to these contentions, that evidence indicates either that no such information exists or that Mr. Abate had no access to it or awareness of it. (See, e.g., Hr'g Tr. 238:20-240:15). Accordingly, the Court will address only those allegations for which ICM has presented at least some modicum of evidence. Thus winnowed, ICM's claims are that Mr. Abate misappropriated his Microsoft Outlook contacts and an associated phone log (Hr'g Exs. 31-32), a list of contacts at various publishing houses (Hr'g Ex. 33), a book proposal, and a box of client contracts.

On February 9, 2007, Mr. Abate emailed a file containing his Microsoft Outlook contacts and an associated phone log either to his wife's email address or to his own personal email address. (See Hr'g Exs. 31-32; Hr'g Tr. 216:16-219:1.) This file contains contact details for friends, family, and people in the publishing industry. (Hr'g Tr. 262:14-18.) There is no evidence in the record to support a contention that ICM regarded this information as secret or made any effort to preserve the secrecy of this information. Indeed, the record indicates that at least one previous employee had openly removed her Rolodex from ICM when leaving ICM for a different agency. (Hr'g Tr. 263:13-18.) It is also significant that ICM does not even seek to demonstrate that it regarded or tried to preserve this information as confidential, that it expended any money or

effort to compile this information, or that this information is not readily and properly acquired or duplicated by others.

On February 9, 2007, Mr. Abate also sent a book proposal to his personal email account. (Hr'g Tr. 263:20-23.) The record does not support ICM's contention that this book proposal is "confidential and proprietary information." (Pl.'s Ltr. to Ct. Mar. 14, 2007). The proposal is the property of the author, not ICM. (Hr'g Tr. 264:2-3.) Further, ICM was willing to provide this information to Mr. Abate after he had started working at Endeavor but before it initiated this action, clearly indicating that ICM did not consider this information confidential and did not seek to keep it confidential. (See Hr'g Tr. 265:5-19; Hr'g Ex. G.)

ICM also claims that Mr. Abate misappropriated a box of client contracts on November 10, 2006. (See Hr'g Ex. 10; Hr'g Tr. 90:11-12, 257:7-13). However, again, ICM has not demonstrated that this information is ICM's confidential information. These contracts are between clients of ICM and third parties, and the clients have copies of their contracts. (Hr'g Tr. 258:24-25). Indeed, ICM sometimes even makes veiled public announcements of the content of agreements such as these. (Hr'g Tr. 118:5-12). More significantly, however, there is no indication in the record that these documents were misappropriated. Rather, Mr. Abate shipped the box of documents

to his home for safekeeping when ICM moved offices. He did this on ICM's instructions. (Hr'g Tr. 257:7-13.) Mr. Abate had the box shipped on November 10, 2006, a point well before the first indication in the record that Mr. Abate would not remain at ICM indefinitely, and the box remained in his home unopened until the initiation of this action. (Hr'g Tr. 258:13-19.)

Finally, ICM contends that Mr. Abate misappropriated a list of publishers' telephone numbers. (Hr'g Ex. 33.) Yet again, ICM has not demonstrated that it took any efforts to protect the confidentiality of this information or that it regarded it as confidential. Further, this information is readily ascertainable from sources outside of ICM and thus not protectable. (Hr'g Tr. 254:12-256:20, 279:7-10); see FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.2d 61, 63 (2d Cir. 1984); Leo Silfen, Inc. v. Cream, 29 N.Y.2d 387, 393-95 (1972). Indeed, Mr. Abate was quickly and easily able to recreate sections of this list by simply asking the publishers themselves for this information. (Hr'g Tr. 254:12-256:20, 279:7-10.)

ICM has not demonstrated that Mr. Abate has misappropriated or is likely to misappropriate any of its confidential customer information or trade secrets. Thus, it has not demonstrated that it faces imminent, irreparable harm absent an injunction prohibiting Mr. Abate from disclosing any such information or using it for Endeavor's benefit.

c. <u>Unique Employee</u>

If Mr. Abate's services are unique, as ICM alleges, injunctive relief may be appropriate. See <u>Ticor Title Ins. Co. v. Cohen</u>, 173 F.3d 63, 70 (2d Cir. 1999). "[S]ervices that are not simply of value to the employer, but that may also truly be said to be special, unique or extraordinary may entitle an employer to injunctive relief." <u>Id.</u> The determination of whether an employee's services are unique is fact-specific and "must of necessity be on a case-by-case basis." <u>Id.</u> at 65. The standard for the uniqueness of an employee is high: an employee is unique if "his services are of such character as to make his replacement impossible or that the loss of such services would cause the employer irreparable injury." <u>Purchasing Associates, Inc. v. Weitz</u>, 13 N.Y.2d 267, 274 (1963).

The only evidence in the record regarding Mr. Abate's uniqueness is the testimony of the author and ICM client Michelle Singletary. Ms. Singletary testified that she had a "pretty unique relationship" with Mr. Abate and that he was a good friend and confidant of hers. (Hr'g Tr. 144:22-145:17.) However, this testimony does little to establish that Mr. Abate was a unique, irreplaceable employee of ICM. Rather, it indicates that Ms. Singletary valued her personal relationship with Mr. Abate highly. This, of course, does not support ICM's application for injunctive relief. Indeed, it is worth noting

15

that Ms. Singletary worked with two different ICM agents on separate but simultaneous projects and that she continues to work with the ICM. (Hr'g Tr. 143:18-144:2.) ICM has failed to demonstrate that Mr. Abate was a unique employee.

    d. Contract Provision

ICM also relies on paragraph 9 of Mr. Abate's employment agreement, in which Mr. Abate acknowledges that his services are "special, unique, extraordinary and intellectual," that any breach of any material provision of the agreement will cause ICM "great and irreparable injury and damage," and that ICM is entitled to seek equitable relief for any breach of the agreement. (Hr'g Tr. Ex. 2 at Ex. A ¶ 9.)

This provision is not without significance; however, "[t]he fact that the contract of hiring acknowledged that the defendant's abilities and capabilities were unique is not controlling upon a court of equity." Frederick Bros. Artists Corp. v. Yates, 271 A.D. 69, 71 (N.Y. App. Div. 1946) (citing Dockstader v. Reed, 121 App. Div. 846 (N.Y. App. Div. 1907)). ICM's "demonstration of irreparable harm [would be] strengthened significantly" by this provision had ICM otherwise demonstrated irreparable harm. Iannucci v. The Segal Co., 06 Civ. 4720 (PKL), 2006 U.S. Dist. LEXIS 43339, at *11, 2006 WL 1880291 (S.D.N.Y. June 26, 2006). However, ICM cannot rely on the contract provision alone to demonstrate irreparable harm. The Court of

Appeals for the Second Circuit has noted that similar language in an employment contract "might arguably be viewed as an admission by [the employee] that plaintiff will suffer irreparable harm were [the employee] to breach the contract's non-compete provision." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999) (relying on several factors showing irreparable harm in affirming issuance of permanent injunction). It has also found such language to be some evidence—although not conclusive evidence—that breach of a confidentiality clause would constitute irreparable harm for the employer. See North Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 49 (2d Cir. 1999). This Court is aware of no authority indicating that such a contract provision entitles the plaintiff to a per se finding of irreparable harm. See Baker's Aid, Div. of M. Raubvogel Co. v. Hussmann Foodservice Co., 830 F.2d 13, 16 (2d Cir. 1987) ("We also agree with the district court that the contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate."). Thus the contract provision alone does not demonstrate that irreparable harm is imminent and likely.

The significance of this provision further diminishes when the provision is considered in its context. This provision was not specially negotiated and included in Mr. Abate's agreement. Rather, it is part of ICM's standard terms and conditions that

17

are used for many employees. (Hr'g Tr. 29:2-5, 86:21-22, 110:10-14.) Accordingly, the thrust of ICM's contention is that all of its employees that agree to ICM's standard terms and conditions are unique and extraordinary and that any material breach by any of those employees of his or her employment contract necessarily will harm ICM irreparably. Such a finding is internally inconsistent and runs contrary to the sort of case-by-case analysis courts engage in to determine whether an employee is unique and whether an employer is faced with imminent, irreparable harm. See, e.g., Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 70 (2d Cir. 1999). Such a finding is also liable to lead to absurd results.

In sum, ICM has not borne its burden of demonstrating that it requires preliminary injunctive relief to protect it from imminent, irreparable harm. Absent such a showing, a preliminary injunction cannot issue.

## CONCLUSION

For the forgoing reasons, plaintiff's application for a preliminary injunction is denied.

**SO ORDERED.**
**New York, New York**

March **28**, 2007

_____
U.S.D.J.